UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

CASE NO.:  8:13-cv-02196-EAK-TBM

JACK LEFROCK, M.D.

    Plaintiff,

v.

WALGREEN CO., a foreign corporation
doing business in Florida

    Defendant.
_____/

**WALGREEN'S SUMMARY JUDGMENT**

**MOTION STATEMENT OF UNDISPUTED FACTS**

Defendant, Walgreen Co., by and through its undersigned counsel, respectfully submits this separate Statement of Undisputed Facts pursuant to the Court's Case Management and Scheduling Order [ECF No. 10, ¶ 6], as follows:

### I.    Procedural Background

1.    Plaintiff originally filed this lawsuit in state court over two-years ago on August 1, 2012, and Walgreens removed it to the Middle District of Florida before the Honorable Steven D. Merryday.  [12-cv-01929-SDM-EAJ ECF Nos. 1, 2].

2.    Judge Merryday eventually dismissed that lawsuit without prejudice because Plaintiff and his counsel did not, after repeated warnings, follow the Federal Rules of Civil Procedure or the Court's orders.  [12-cv-01929-SDM-EAJ ECF No. 16; *see also* ECF No. 28 in this case, pp. 4-5 (detailing all of these issues)].

3. Plaintiff re-filed his lawsuit in state court on February 11, 2013, and Walgreens again removed it. [ECF Nos. 1 & 2].

4. Plaintiff was recently sanctioned by this Court for failing to obey, among other rules and orders, an order compelling discovery entered on August 29, 2014 (about 66 days ago) and to date Plaintiff has still not complied fully with that order, including by not providing any written responses to requests for production (documents were provided in a literal "document dump" of two bankers boxes). [*See* ECF Nos. 21 & 35].

## II. The Parties

### a. Walgreens

5. Walgreens is an Illinois corporation with nearly 900 Florida pharmacy locations and over 8000 locations in the United States. *See* Florida Sunbiz.com printout, attached as Exhibit 1.[1] [*See also* ECF No. 26, p. 13; ECF No. 2, ¶ 3; ECF No. 3, ¶ 3].

### b. Plaintiff Jack LeFrock, M.D.

6. Plaintiff is a medical doctor who from approximately 1970 to 1998, when he retired, specialized in infectious diseases. *See* Deposition Transcript of Jack LeFrock, M.D., the cited excerpts which are attached as Exhibit 2, 6:9-11, 7:4-6.

7. Plaintiff did not practice pain management until approximately 2007 when he came out of retirement. LeFrock Dep. Tr. at 7:25-8:2, 47:25-48:3 (clarifying he did

---

[1] *See generally O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (noting that "It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *Thomas v. New Leaders for New Schs.*, 278 F.R.D. 347, 349 n.5 (E.D. La. 2011) (finding that "because the organization is registered as a non-profit corporation with the Louisiana Secretary of State, the Court will take judicial notice of this fact.")

2

not start practicing again until 2007), 54:22-24 (clarifying this is when he returned to medicine), 174:2-4 (noting he has been in pain management for the last six years).

*i.  Plaintiff's Substantial Loss of Money and Decision to Come Out of Retirement*

8. Plaintiff was financially secure at the time of his retirement but that began to change when he lost $2.5 to $3 million—or over half of his retirement savings—on various real estate investments he made after retiring. LeFrock Dep. Tr. at 14:12-14, 28:16-19; 48:8-10.

9. Plaintiff also owes another $2 million to banks and investors as a result of these failed investments, including money due on a personal construction loan guaranty he signed. LeFrock Dep. Tr. at 48:16-21, 49:15-20.

10. Initially, when Plaintiff began to look for work again following these loses, he did things such as work for the Department of Health, but the "two, three thousand a month" this paid was "not a great paycheck" and he "wanted to make a little more money" in order to pay back the money he owed from his failed investments. LeFrock Dep. Tr. at 42:6-15.

11. Plaintiff had the opportunity to resume his hospital medical practice, but he was not willing to do the work it took, which would have included performing a five-year rotation involving late-night emergency medicine. LeFrock Dep. Tr. 37:1-40:20.

12. Therefore, the year after his losses reached $2.5 million, in approximately 2007 or 2008, Plaintiff instead took a position with a "pill mill" named Health and Pain. LeFrock Dep. Tr. at 26:10-16, 31:17-19.

13. A "pill mill" is a business which accepts patients on a cash basis, typically

does not accept insurance, and in which physicians write prescriptions for whatever pain medication prescription a patient requests without any regard to the medical appropriateness of the pain medication. Deposition Transcript of Katherine Harris, relevant excerpts attached as Exhibit 3, 54:6-22.

14. According to Plaintiff, a "pill mill" can also be defined as "you could get anything you wanted from the doctor, long as you paid your money." LeFrock Dep. Tr. 171:10-14.

15. Plaintiff worked at Health and Pain for about eight months, despite realizing after only a few months that Health and Pain was, in fact, a "pill mill." LeFrock Dep. Tr. 31:17-19, 32:16-17, 35:21-24.

16. Plaintiff admits the following things were true while he knowingly worked at "pill mill" Health and Pain:

   a. Plaintiff was either the sole physician working at Health and Pain or, from time to time, perhaps one other physician would assist him. LeFrock Dep. Tr. at 35:2-6, 60:19-22.

   b. Plaintiff saw at least 35 to 45 patients per day. LeFrock Dep. Tr. at 60:8-11.

   c. The narcotics prescriptions Plaintiff gave to his "pill mill" patients were drafted by secretaries and nurses and presented to him completed for his signature. LeFrock Dep. Tr. at 65:7-10, 69:5-12.

   d. Plaintiff did nothing to screen existing clinic patients before writing them narcotics prescriptions. LeFrock Dep. Tr. at 76:6-10.

4

17.     Health and Pain is where Plaintiff first saw the pain clinic business model and how it is run. LeFrock Dep. Tr. 63:20-64:2.

18.     Plaintiff eventually left Health and Pain and took 300 of Health and Pain's patients with him to Plaintiff's own personal, newly opened competing pain clinic about ten miles away called Above and Beyond. LeFrock Dep. Tr. 61:15-19, 62:20-22, 63:3-4, 63:10-13.

19.     Above and Beyond is a cash only practice. Pill mills are often structured on a cash basis because it is more difficult to record the transactions. LeFrock Dep. Tr. 238:17-22, 238:25-239:8.

20.     Plaintiff believes patients who abuse pain medications have a propensity to lie to ensure they get their pain medications. LeFrock Dep. Tr. 125:24-126:8.

21.     Plaintiff agrees that any Florida pharmacist, including a Walgreens pharmacist, has the right not to fill a prescription based upon the exercise of the pharmacist's professional judgment and Plaintiff is unaware of any legal obligation a pharmacist has to contact the physician beforehand. LeFrock Dep. Tr. 166:6-16, 167:9-15, 229:18-22.

### III.    Plaintiff's Allegations and Relevant Record Facts

22.     Plaintiff admits he never personally heard a Walgreens' employee make any slanderous remarks about him. LeFrock Dep. Tr. 179:6-20.

23.     In his re-filed complaint, Plaintiff alleges certain of his patients—Ryan King, Michael Bean, James Hamblin, Thomas P. O'Callaghan, Crystal Rivera, Mahlon D. Care, Brian Apuli, Stella André, and Dina King—heard Walgreens employees make

what Plaintiff considers to be slanderous remarks pertaining to his medical reputation and ethics. [*See generally* ECF No. 2].

24. Plaintiff attached affidavits from Bean, Hamblin, O'Callaghan, Rivera, Care, Apuli, and Dina King to his complaint. Although not mentioned in the complaint, he also attached affidavits from patients Erik Kirby, Scott Cleveland, and Dwayne Rowell, as well as from his office manager Cindy Dorman and his own personal affidavit.[2] [ECF No. 2].

25. Plaintiff has admitted he asked these patients to complete these affidavits. LeFrock Dep. Tr. 177:23-25.

26. Plaintiff has discharged Scott Cleveland, Crystal Rivera, and Dwayne Rowell for illegal activities or drug-seeking. LeFrock Dep. Tr. 188:11-14.

27. According to Plaintiff, Mr. Cleveland was doctor shopping and selling pain medication to children, Ms. Rivera was arrested for drug paraphernalia and prostitution, and Mr. Rowell was doctor shopping. LeFrock Dep. Tr. 186:19-187:2, 189:8-12, 190:16-22.

28. The Court struck the affidavits of Dina King, Brian Apuli, and Scott Cleveland on statute of limitations grounds and, in part because Plaintiff did not oppose

---

[2] It appears the Clerk of Court mistakenly restricted access to all of the complaint affidavits after entry of the order as striking only certain affidavits, as none of the exhibits to the complaint are viewable on CM/ECF. Because the only view available to the parties lists them as "Restricted" when docket entry number 2 is opened, Walgreens is unable to provide specific record cites to the affidavits. Walgreens notes, however, these should be available to the Court as the restricted attachments to docket entry number 2. Walgreens did not want to re-file the material but will do so if the Court decides it is appropriate.

the motion. [ECF Nos. 4 & 8]. The result is there is no record evidence regarding any alleged slanderous statements heard by these individuals.

29.     Plaintiff did not attach affidavits from Ryan King or Stella André to his filed complaint, despite mentioning them in his complaint and there is no record evidence regarding these purported witnesses. [*See* ECF No. 2].

30.     Walgreens is not the first pharmacy company which did not fill Plaintiff's prescriptions. For various reasons, others have not including Target and CVS. LeFrock Dep. Tr. 219:18-220:2.

### IV.     Plaintiff Has Taken the Position The Only Evidence He Has Regarding the Allegedly Defamatory Statements Are the Affidavits Attached to His Complaint

31.     Plaintiff stated in his complaint he does <u>not</u> know the identity of the Walgreens employees who allegedly made slanderous statements to Ryan King, Michael Bean, James Hamblin, Thomas P. O'Callaghan, Crystal Rivera, Mahlon D. Care, Brian Apuli, Stella André, and Dina King. [*See* ECF No. 2, ¶¶ 4(b)(i)-(ix)].

32.     On October 21, 2014, at the recent sanctions hearing, Plaintiff's counsel conceded Plaintiff cannot adequately identify any of the Walgreens' employees who alleged made slanderous statements. [ECF No. 35, pp. 2-3 ("Plaintiff concedes that he has been unable to identify any Walgreen employee allegedly making a slanderous comment about him and it appears unlikely that he can carry his burden of proof.")].

33.     Most recently, on October 24, 2014, Plaintiff swore under oath in his interrogatory answers that the <u>only</u> information and evidence he has regarding the allegedly slanderous statements are the affidavits attached to his complaint. [*Compare*

7

18972970v1 0944589

ECF No. 36, containing interrogatory answers 5, 13, 14, and 15 on pages 6-9, with ECF No. 18, containing corresponding interrogatories on pages 11-13].

34. Plaintiff also answered an interrogatory asking for the names of all individuals who possess knowledge about any issue in the case but did mention any other possible witnesses as to the allegedly slanderous statements. [*Compare also* ECF No. 36, containing interrogatory answer 8 on page 12 naming all witnesses and what they know, with ECF No. 18, containing corresponding interrogatories on page 12].

35. Plaintiff never made Rule 26 disclosures and thus has identified no witnesses that way.

### V.     The Affiant's Affidavits and/or Deposition Testimony[3]

36. **Dina King** alleged her in affidavit only that a skinny pharmacist with brown hair was rude and called Dr. LeFrock a pill pusher, and would not fill her prescriptions. Ms. King does not provide any date or time or the identity of the Walgreens' pharmacist who alleged made these comments and her affidavit was already stricken by the Court. [*See* ECF No. 2].

37. Ms. King does not claim she told any other individuals about these comments and does not name any other individual who heard these comments.

---

[3]     Walgreens does not believe the stricken affidavits are competent summary judgment evidence since they are technically not in the record anymore and discusses them herein without waiving that objection only in order to provide a complete picture to the Court.

38. Plaintiff did not identify any contact information for Ms. King and therefore Walgreens was unable to take her deposition and there is no way to call her as a trial witness.

39. **Brian Apuli** alleged in his affidavit that only "five or six months ago" he visited Walgreens and was told "he's a doc in a box" and "we won't fill it." Mr. Apuli's affidavit does not specify if that time period was within the two-year statute of limitations or identify who made the statement and his affidavit was already stricken by the Court.

40. Mr. Apuli does not claim he told any other individuals about these comments and does not identify any other individual who heard these comments.

41. Plaintiff did not identify any contact information for Mr. Apuli and therefore Walgreens was unable to take his deposition and thus there is no way to call him as a trial witness.

42. **Scott Cleveland** alleged in his affidavit only that he went to Walgreens and was told the non-slanderous comment "we do not fill for this doctor." Mr. Cleveland does not give a year of his visit or identify any other individual who heard these comments and his affidavit was already stricken by the Court.

43. Plaintiff did not identify any contact information for Mr. Cleveland and therefore Walgreens was unable to take his deposition and there is no way to call him as a trial witness.

44. **Michael Bean** alleged in his affidavit he was told Dr. LeFrock was incompetent, that Walgreens would not honor a prescription from Dr. LeFrock, and that Walgreens didn't have a working relationship with Dr. LeFrock.

18972970v1 0944589

45. Mr. Bean does not identify who allegedly said these things to him and does not specify what specifically was said on each the three different dates mentioned.

46. Mr. Bean testified at his deposition that: (a) he cannot recall any specific date he visited a Walgreens in 2011; (b) he cannot name any individual at Walgreens with whom he spoke while trying to fill a Dr. LeFrock prescription; (c) nothing he heard from any Walgreens employee changed his opinion of Dr. LeFrock and Dr. LeFrock is still his pain physician; (d) he did not believe the alleged slanderous statements he heard; (e) the statements in his affidavit represent only sentiments and not exact words.[4] Deposition Transcript of Michael Bean, relevant excerpts attached as Exhibit 4, 32:7-19, 34:3-16, 35:6-8, 35:21-23, 39:17-23, 41:11-42:16, 46:2-19, 49:2-13, 50:14-15

47. **Michael Hamblin** alleged in his affidavit only that someone at a Walgreens' location "Said Dr. Jack was unethical. Did not fill scrips!!" Mr. Hamblin does not identify who made these statements, the date they were made, or whether any other individuals heard the statements.

48. Walgreens attempted to serve Mr. Hamblin with a deposition subpoena but the trailer park manager at the only available address available for him had no record of his living there. A copy of the return and proof of non-service is attached as Exhibit 5. Thus, there is no way to call this witness at trial.

---

[4] Mr. Bean mentions possibly being able to do so with photographs of individuals, but Plaintiff never requested any photographs in discovery and discovery is now closed. Bean Dep. Tr. 32:19-20.

18972970v1 0944589

49. **Mahlon Care** alleged in his affidavit that a "lady pharmacist" refused to fill her prescriptions and told him Dr. LeFrock is running a pill mill, should have been in the ground ten years ago, and lacks proper credentials. Mr. Care does not provide the identity of this "lady pharmacist," does not indicate on what date or in what year it occurred, or whether any other individuals heard the statements.

50. Mr. Care testified at his deposition that: (a) he did not get the name of the alleged "lady pharmacist;" (b) he is not sure if she used the words "pill mill;" (c) he does not know when these statements were allegedly made; and (d) he continues to see Dr. LeFrock and did not even look for another physician after the alleged statements. Deposition Transcript of Mahlon D. Care, relevant excerpts attached as Exhibit 6, 20:11-14, 21:23-22:1, 22:16-23:2, 26:7-13, 34:6-21, 42:2-5.

51. **Dwayne Rowell** did not identify any slanderous statement in his affidavit. Mr. Rowell instead claims he was told merely that "We do not accept prescriptions from this doctor." Mr. Rowell also does not identify the individual at Walgreens who allegedly made this non-defamatory statement to him.

52. Walgreens subpoenaed Mr. Rowell for deposition but he did not show and Plaintiff's counsel stated on the record that Plaintiff "was unable to complete telephone contact with the deponent." A copy of this short deposition transcript is attached as Exhibit 7. Thus, there is no way to call this witness at trial.

53. **Crystal Rivera** alleged in her affidavit she was given the opinion at Walgreens that her doctor was "not a legit doctor because if I was an [sic] actually pain

11

management patient I would be on a long acting and short acting medications" and because her doctor "didn't write long acting and short acting medications."

54.     Ms. Rivera did not identify the alleged Walgreens employee who made these statements or the date, time, or year the statements were made.

55.     Walgreens attempted to subpoena Ms. Rivera for deposition but the only address available turned out to be a motel and the manager indicated Ms. Rivera had not lived there for a year.  A copy of the return and proof of non-service is attached as Exhibit 8.  Thus, there is no way to call Ms. Rivera as a trial witness.

56.     **Erik Kirby** alleged in his affidavit only that a Walgreens pharmacist told him "she didn't feel comfortable filling Dr. LeFrock's patient's prescriptions."  Mr. Kirby does not identify who this pharmacist was in any way and identifies no slanderous statements.

57.     Walgreens attempted to subpoena Mr. Kirby for deposition but the individual currently residing at the only address available for Mr. Kirby indicated Mr. Kirby moved away four months earlier and left no forwarding address.  A copy of the return and proof of non-service is attached as Exhibit 9.  Thus, there is no way to call him as a trial witness.

58.     **Thomas O'Callaghan** alleges in his affidavit that on May 4, 2012, a Walgreen's pharmacy manager named Isaak Smith told him he would not fill a prescription from Dr. LeFrock because Dr. LeFrock was under criminal investigation. *But see also* paragraphs 67 to 69 below (detailing how this was true to the extent Plaintiff

18972970v1 0944589

was receiving criminal records subpoenas relating to his patients). Mr. O'Callaghan acknowledges that he took the same prescription to another Walgreens which filled it.

59. Mr. O'Callaghan testified at his deposition that, while being treated by Dr. LeFrock, he was arrested for and pleaded guilty to possession of a controlled substance (oxycodone). Deposition Transcript of Thomas O'Callaghan, relevant excerpts attached as Exhibit 10, 13:9-14:4.

60. Mr. O'Callaghan is himself a pharmacist but no longer has his pharmacy license because the Florida Board of Pharmacy revoked it and refuses to reinstate it. O'Callaghan Dep. Tr. 14:18-22, 20:10-16.

61. Mr. O'Callaghan confirmed that a Florida pharmacist has the legal right to refuse to fill any prescription based upon their professional judgment. O'Callaghan Dep. Tr. 30:13-21. In fact, he himself turned down otherwise valid prescriptions "closer to a thousand times" when he worked as a pharmacist. *Id.* at 42:1-6, 42:17-43:3.

62. Mr. O'Callaghan testified that when he refused to fill prescriptions the customers would become angry 90% of the time and take it out on the store manager or whatever employee was nearby. O'Callaghan Dep. Tr. 44:4-12.

63. Mr. O'Callaghan confirmed his experience at Walgreens did not include use of the term "pill mill" or, if it did, then he cannot say that it was in reference to Plaintiff. O'Callaghan Dep. Tr. 73:3-5, 100:1-6.

64. Mr. O'Callaghan continues to treat with Plaintiff and the alleged criminal investigation statement did not change his relationship with Plaintiff because Mr. O'Callaghan states he knew it was not true. O'Callaghan Dep. Tr. 74:24-75:7.

13

65.     Although Mr. O'Callaghan referred to an "Isaak Smith" in his affidavit, when presented with his affidavit statements during his deposition he instead for the date of the incident in question was only able to recall a "bald gentlemen" manager making the statements. O'Callaghan Dep. Tr. 63:19-64:16.  On cross-examination by Plaintiff's counsel, Mr. O'Callaghan at no time changed this answer and gave a name. *See generally* O'Callaghan Dep. Tr.

66.     **Cindy Dorman** alleges in her affidavit she heard hearsay statements from patients that a Walgreens employee named only "Kathy" said the non-slanderous statement that Plaintiff was on a do not fill list.  Ms. Dorman alleges she called the store and was told the same thing but does not identify who told her that or on what date, time, or year she called.

67.     Ms. Dorman testified in her deposition that, as of February 2011, Plaintiff had turned in up to a hundred of his patients to the police for doctor shopping and the narcotics units for Pinellas and Sarasota began criminal investigations.  Deposition Transcript of Cynthia A. Dorman, relevant excerpts attached as Exhibit 11, 32:15-19.

68.     Plaintiff's office began to receive criminal investigatory subpoenas after February 2011.  Dorman Dep. Tr. 33:5-11.  The patients under investigation amounted to 25% of Plaintiff's patients at that time.  Dorman Dep. Tr. 34:14-18, 34:25-36:2.

69.     Also at the time of these investigations, the State of Florida and pharmacies began to clamp down on pain drug abuse.  Dorman Dep. Tr. 35:5-21.

70.     Ms. Dorman confirmed that even as of the date of her deposition on June 24, 2014, there was still at least one ongoing criminal investigation involving one of

18972970v1 0944589

Plaintiff's patients, she occasionally finds more in Pinellas, and has found five or six after 2012.  Dorman Dep. Tr. 51:8-22, 52:1-4

71. In Ms. Dorman's experience, not all Walgreens pharmacists refused to fill Plaintiff's prescriptions and those who did would do would look up a particular patient and discuss it with her over the phone when she called them.  Dorman Dep. Tr. 54:22-55:5.

72. **Plaintiff Jack LeFrock** alleged in his affidavit that he called and spoke to "Kathy" at a Walgreens store and was told non-slanderous fact that Kathy would not fill his prescriptions because he was on a do not fill list.  He does not allege any third-parties heard the exchange.

73. **Walgreens** corporate representative testified that a reasonable pharmacist could have concern over filling Plaintiff's prescriptions since a large number of his patients have in the past have doctor-shopped and, as Plaintiff admits, he was affiliated with a "pill mill."  Harris Dep. Tr. 124:15-125:2, 148:1-5, 164:1-3.

74. Walgreens' corporate representative testified that, based upon the information Plaintiff has alleged or provided, she "can't even figure out which pharmacists [allegedly] made those statements to talk to them about it."  Harris Dep. Tr. 137:7-14, 149:9-14, 154:18-25.

75. Although Plaintiff takes the position otherwise, Walgreens does not maintain a "do not fill" list containing the names of doctors whose prescriptions it will not fill, just as it conversely does not have an "approved" list.  Harris Dep. Tr. 24:14-22

76. Walgreens has never imposed a restriction on filling prescriptions written by Plaintiff and instead each pharmacist looks at every patient's prescription on a patient-by-patient basis by individual pharmacists and exercises professional discretion. Harris Dep. Tr. 24:1-7, 48:23-49:7, 59:2-14, 100:4-10.

77. A Walgreens pharmacist may not feel comfortable filing a prescription if they feel the patient is possibly being investigated or committing narcotics fraud. Harris Dep. Tr. 100:1-3.

78. Plaintiff has no evidence Isaak Smith worked at Walgreens as a pharmacy manager. *But see* Harris Dep. Tr. 92:15-21 (corporate representative does not personally know this individual).

79. With regard to the alleged to Mr. Care's allegation he heard a pharmacist suggest Plaintiff should have been in the ground ten years ago, it is impossible to precisely ascertain the meaning of this statement without more contextual information. Harris Dep. Tr. 111:4-13, 145:22-146:13.

80. A reasonable pharmacist who was aware of Plaintiff's admitted history working at a "pill mill" be concerned with filling a prescription written by Plaintiff. Harris Dep. Tr. 123:17-124:9.

**VI.    Plaintiff Refuse to Provide Any Information About His Alleged Damages**

81. Plaintiff has, to date, not identified any damages he claims to have suffered.

82. Plaintiff was unable to describe precisely what his damages are at his deposition. LeFrock Dep. Tr. 221:10-15.

18972970v1 0944589

83. Plaintiff *suggested* at his deposition his damages would be financial and based upon those patients who could not get their prescriptions filled at Walgreens and, as a result, left his practice, but could not provide any details at his deposition. *See* LeFrock Dep. Tr. 220:8-223:24.

84. Walgreens asked Plaintiff after his deposition for his damages information in interrogatories but, this time, Plaintiff claimed not to understand the interrogatory and at the same time stated he still did not have the information. [*Compare* ECF No. 36, interrogatory answer number 12 on pages 3-4 and interrogatory answers numbers 7 and 16 on page 6 and 9, *with* ECF No. 18, which contains the corresponding interrogatories on pages 10, 12, and 13 (please note there are two sets of interrogatories and number 12 comes from the first set with the rest from the second set].

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 3rd day of November, 2014, we electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to LAWRENCE KLEPETKO, ESQ., 46 North Washington Boulevard, Suite 15, Sarasota, FL 34236, kelptx@yahoo.com.

18972970v1 0944589

HINSHAW & CULBERTSON LLP
*Attorneys for Walgreen Co.*
One East Broward Boulevard
Suite 1010
Ft. Lauderdale, FL 33301
Telephone: 954-467-7900
Facsimile: 954-467-1024


s/Daniel A. Krawiec
Martin D. Stern
Florida Bar Number: 72354
mstern@hinshawlaw.com
Daniel A. Krawiec
Florida Bar No. 59136
dkrawiec@hinshawlaw.com

18972970v1 0944589